NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                               :
ROLANDO TERRELL,               :
                               :    Civil Action No. 11-0832 (CCC)
              Plaintiff,       :
                               :
         v.                    :         O P I N I O N
                               :
ROY HENDRICKS, et al.,         :
                               :
              Defendants.      :
_____:
```

APPEARANCES:

Rolando Terrell, Pro Se
696225/651048B
New Jersey State Prison
P.O. Box 861
Trenton, NJ 08625-0861

Alan R. Ruddy, Esq.
Office of the Essex County Counsel
Hall of Records, Room 535
465 Dr. Martin Luther King Blvd.
Newark, NJ 07102
Attorney for Defendants Hendricks, Pringle, DeRosa, Condito,
Ferrante, Richardson, Conway, Piercy, Cappola, Gonzales, Phelps,
Wali, Douglas and Dykes

CECCHI, District Judge

     THIS MATTER comes before the Court on the motion of

Defendants Hendricks, Pringle, DeRosa, Condito, Ferrante,

Richardson, Conway, Piercy, Cappola, Gonzales, Phelps, Wali,

Douglas and Dykes ("County Defendants"), to dismiss the

Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).  (Docket entry

no. 24).  Plaintiff filed opposition to Defendants' motion, to

which Defendants replied.  This matter is being considered on the
papers pursuant to Fed. R. Civ. P. 78.  For the reasons set forth
below, Defendants' motion will be partially granted.[1]

**BACKGROUND**

Plaintiff filed this Complaint on February 24, 2011, seeking
damages and injunctive relief against numerous employees of the
Essex County Correctional Facility ("ECCF"), citing jurisdiction
under 42 U.S.C. §§ 1983 and 1985(3).  (Complt., ¶ 1).  He also
claims supplemental jurisdiction over state law claims under 28
U.S.C. § 1367.

First, Plaintiff asserts that he was unlawfully confined in
punitive segregation, without due process, and was denied access
to the law library, recreation and his right to "religious
freedom as a practicing Muslim."  (Complt., ¶ 2).  Second,
Plaintiff asserts that "widespread patterns and practices . . .
reveal an ongoing conspiracy to violate constitutional rights and
widespread correction and continued constitutional violations
against pre-trial detainees."  (Complt., ¶ 8).

---

[1] This Court notes that an appearance was made by Alan
Ruddy, Esq., of the Office of the Essex County Counsel, who
submits this motion on behalf of defendants Hendricks, Pringle,
DeRosa, Condito, Ferrante, Richardson, Conway, Piercy, Cappola,
Gonzales, Phelps, Wali, Douglas and Dykes.  Mr. Ruddy states that
defendants Sabaka, Rupp and Hurst are either unknown or no longer
employed by the County, so he did not file a pleading on their
behalf.  (Motion, Brief, p. 1, Statement of Facts and Procedural
History).  This Court will refer to the represented defendants as
the "county defendants" or simply, "defendants."

Specifically, Plaintiff states that on September 13, 2008, he was being held as a pretrial detainee at ECCF. "Without incident, Plaintiff was placed in the single cell from September 13, 2008 to October 14, 2008 and unlawfully confined for 23 hours, 15 minutes per day." (Complt., ¶¶ 17-19). During confinement, he was denied recreation, his freedom to practice as a Muslim, access to legal materials, and access to the law library. (Complt., ¶ 19). Plaintiff had not received any disciplinary reports to warrant his confinement, which he claims was unlawful. (Complt., ¶¶ 20-21).

On October 14, 2008, Plaintiff was transferred, again to a single cell, and the practices and deprivations continued. His grievances were repeatedly ignored. (Complt., ¶¶ 22-23). In December of 2008, Plaintiff was again transferred, and Plaintiff filed a grievance. In late December 2008, Plaintiff was transferred to a two-man cell, where he remained until June 2009. Plaintiff notes that: "The practices aforementioned continued throughout from December 2008 thru June 2009." (Complt., ¶¶ 24-30). He asserts that his confinement in a two-person cell in excess of 167 hours a week as a pretrial detainee, without due process, denied his constitutional rights. (Complt., ¶¶ 31-32).

On June 3, 2009, Plaintiff complained to Internal Affairs and the Ombudsman to address his grievances, and was granted an

interview.  (Complt., ¶ 34).  Plaintiff states nothing was done
to remedy the situation.  (Complt., ¶ 37).

On June 5, 2009, two days later, Plaintiff was informed that
he should pack his bags, and was told that he was being taken to
Trenton to the Central Reception Assignment Facility ("CRAF").
The shift commander informed Plaintiff that he was being
transferred due to a parole violation; however, Plaintiff claims
he was never "violated" by the Division of Parole, and that the
transfer was retaliatory.  (Complt., ¶¶ 38-41).

At CRAF, Plaintiff was advised of a parole violation.  There
was some sort of meeting, and Plaintiff was informed he would be
continued on parole.  (Complt., ¶¶ 44-47).  Plaintiff suggests
that his transfer to CRAF was retalitory, and a tactical maneuver
meant to ensure that Plaintiff could not be bailed out.
(Complt., 48-50).

Plaintiff was returned to ECCF on August 27, 2009, and on
September 21, 2009, was subjected to several allegedly illegal
body cavity searches.  Plaintiff notes that defendants advised
him that a "snitch" told them he was in possession of a cell
phone.  There was no nurse or doctor present for the search, and
a body cavity search was conducted on Plaintiff without surgical
gloves.  Plaintiff claims that the search process was repeated
several times that day.  (Complt., ¶ 51-58).  He was placed into
the "RAP" program (Restricted Activities Program), "constructed

4

for unruly, violent detainees," although he had no disciplinary actions and "did not provoke [any] incident[s]." (Complt., ¶¶ 59-62).

Plaintiff was held in punitive segregation until October 20, 2009, and claims he was again deprived of library access, religious practices, and recreation. He was also denied telephone privileges and hygiene and stationary items. (Complt., ¶¶ 63-64).

On November 18, 2009, Plaintiff was again moved to "pre-hearing," detention. There, he was subject to additional strip searches and his dentures were thrown away by officers, making it difficult for him to eat. Plaintiff asserts that defendants Conway, Condito, and DeRosa, "all knew about these deliberate, intentional, and malicious wanton acts of their correctional officers and employees of the [ECCF]." (Complt., ¶¶ 66-68).

When Plaintiff was taken out of detention, on December 22, 2009, he learned that his property was either lost or stolen. Defendant Hurst told Plaintiff that he had given Plaintiff's property to another inmate who had been released. (Complt., ¶¶ 69-70).

On September 3, 2010, Plaintiff was again reassigned cells and placed in punitive segregation without procedural due process, and no infraction or disciplinary action. (Complt., ¶¶ 72-74). On March 26, 2010, Plaintiff was reassigned to another

cell.  Plaintiff believes the reassignments were "a direct result of Plaintiff as an 'inmate advocate' throughout the facility." (Complt., ¶¶ 79-80).

On May 20, 2010, Plaintiff's cell was searched while he was on a visit, without his knowledge or his presence.  During that time, when Plaintiff's visit was completed, he was told to wait in the recreation room.  Defendants alleged they had found an "explosive" device in Plaintiff's pants pockets; however, Plaintiff points out that there are no pants pockets in county uniforms.  (Complt., ¶¶ 83-85).  Various cell transfers occurred and on October 11, 2010, Plaintiff was blocked from contacting the Courthouse or the office of the Public Defender.  Plaintiff was advised that he would remian on "IPC" status "23 hours 15 minutes a day lockdown without legal justification and such served no legitimate penological interest."  (Complt., ¶¶ 94-98).

After filing a civil action in this District Court,[2] Plaintiff was transferred to Hudson County Correctional Facility. It is from that facility that he filed this Complaint.  Plaintiff is currently confined at the New Jersey State Prison.  (Complt., ¶¶ 100-104, Docket).

On March 1, 2012, in response to the Complaint, the county defendants filed this Motion to Dismiss (docket entry 24).  On

_____

[2] See Terrell v. Essex County Correctional Facility, 10-cv-5542 (WJM), administratively terminated and closed on November 24, 2010.

6

April 3, 2012, Plaintiff filed an opposition brief, and on April
17, 2012, Defendants filed a reply brief.

**DISCUSSION**

A.   **Standard on Motion to Dismiss**

In deciding a motion to dismiss pursuant to Federal Rule of
Civil Procedure 12(b)(6), a court is required to accept as true
all allegations in the complaint and to view all reasonable
inferences that can be drawn therefrom in the light most
favorable to the plaintiff.  See, e.g., Ashcroft v. Iqbal, 556
U.S. 662, 129 S.Ct. 1937, 1949-50, 173 L.Ed.2d 868 (2009); Bell
Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167
L.Ed.2d 929 (2007); Oshiver v. Levin, Fishbein, Sedran & Berman,
38 F.3d 1380, 1384 (3d Cir. 1994).  To survive a motion to
dismiss, a complaint must state a plausible claim for relief.
Iqbal, 129 S.Ct. at 1950.  The complaint need not provide
detailed factual allegations, however, a plaintiff's obligation
to provide the grounds of his entitlement to relief "requires
more than labels and conclusions, and a formulaic recitation of
the elements of a cause of action will not do." Twombly, 550
U.S. at 555.  Thus, assuming that the factual allegations in the
complaint are true, those "allegations must be enough to raise a
right to relief above a speculative level."  Id.

B.   **42 U.S.C. § 1983**

A plaintiff may have a cause of action under 42 U.S.C.

7

§ 1983 for certain violations of his or her constitutional rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff must demonstrate that the challenged conduct was committed by (1) a person acting under color of state law and (2) that the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.  See Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

C.   **42 U.S.C. § 1985**

To state a claim under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

United Broth. of Carpenters and Joiners v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).

D.   <u>Analysis</u>

1.   <u>Strip Search Claims</u>

Plaintiff asserts that he was illegally and unconstitutionally subjected to body cavity searches while a pretrial detainee at the ECCF.  He states that he was ridiculed and that the body cavity search was completed without gloves, with no doctor or nurse present.  The search process was repeated several times in the same day, and at one point, a metal detector was used.  (Complt., ¶¶ 54-58).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures." U.S. CONST. amend. IV. Reasonableness under the Fourth Amendment "depends on all of the circumstances surrounding the search or seizure and the nature of the search or seizure itself." <u>Skinner v. Ry. Labor Executives' Ass'n</u>, 489 U.S. 602, 618, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1988) (quoting <u>United States v. Montoya de Hernandez</u>, 473 U.S. 531, 537, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)). "Thus, the permissibility of a particular practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." <u>Id.</u> at 619 (quotation marks and internal citation omitted).

In <u>Hudson v. Palmer</u>, 468 U.S. 517, 530, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), a prisoner argued that a cell search

conducted to harass him was unreasonable because a prisoner has a reasonable expectation of privacy not to have his cell, locker, personal effects, or person invaded for such a purpose. Id. at 529. The Supreme Court rejected the claim because "prisoners have no legitimate expectation of privacy." Id. at 530. The Court observed that:

> A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.... [S]ociety would insist that the prisoner's expectation of privacy always yield to what must be considered the paramount interest in institutional security.... [I]t is accepted by our society that loss of freedom of choice and privacy are inherent incidents of confinement.

Id. at 527-28 (footnotes, citations and internal quotation marks omitted). The same conclusion was reached with respect to pretrial detainees other than convicted prisoners. See Bell v. Wolfish, 441 U.S. 520, 558-560, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (finding that body cavity searches of pretrial detainees do not violate the Fourth Amendment).

Inmates also do not have a Fourth Amendment right to be free of strip searches, which may be conducted by prison officials without probable cause provided that the search is conducted in a reasonable manner. See Bell v. Wolfish, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Ostrander v. Horn, 145 F. Supp.2d 614, 620 (M.D. Pa. 2001). "Maintaining institutional security and preserving internal order and discipline are essential goals that

10

may require limitation or retraction of the retained

constitutional rights." Bell, 441 U.S. at 546. As such, the

alleged infringement of a prisoner's constitutional rights must

be evaluated in the light of the central objective of prison

administration, safeguarding institutional security. Id. Prison

officials should be accorded "wide-ranging deference in the

adoption and execution of policies and practices that in their

judgment are needed to preserve internal order and discipline and

to maintain institutional security." Bell, 441 U.S. at 547; see

also Florence v. Bd. of Chosen Freeholders of Cnty. of

Burlington, 566 U.S. ----, 132 S.Ct. 1510, ---L.Ed.2d ----, 2012

WL 1069092, at *7 (2012). "[I]n the absence of substantial

evidence in the record to indicate that the [prison] officials

have exaggerated their response to [legitimate security

interests,] courts should ordinarily defer to their expert

judgment in such matters." Bell, 441 U.S. at 548 (citation

omitted); Florence, --- U.S. ----, at ----, 132 S.Ct. 1510,

---L.Ed.2d ----, at ----, 2012 WL 1069092, at *7 (same).

Thus, in the context of the Fourth Amendment, courts must

conduct a balancing of the need for a particular search against

the invasion of personal rights that the search entails. "Courts

must consider the scope of the particular intrusion, the manner

in which it is conducted, the justification for initiating it,

and the place in which it is conducted." Bell, 441 U.S. at 559.

11

Strip searches that are excessive, vindictive, harassing, or unrelated to any legitimate penological interest may violate the Fourth Amendment. See e.g. Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988).

In Bell, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body. In other words, courts must balance the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. Bell, 441 U.S. at 559; see also Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest).

Consequently, even if strip searches were conducted repeatedly or unnecessarily, there is no Fourth Amendment violation if plaintiff cannot show that the strip searches were conducted in an unreasonable manner. See Wilson v. Shannon, 982 F.Supp. 337, 339 (E.D. Pa. 1997); Collins v. Derose, 2009 WL

12

812008, at *5 (M.D. Pa. March 26, 2009). <u>See</u> <u>also</u> <u>Florence v. Bd.</u>
<u>of Chosen Freeholders of Cnty. of Burlington</u>, 566 U.S. ----, 132
S.Ct. 1510, ---L.Ed.2d ----, 2012 WL 1069092 (2012); <u>United</u>
<u>States v. Whitted</u>, 541 F.3d 480, 486 (3d Cir. 2008).

Here, Plaintiff alleges more than the simple fact that he
was subjected to strip searches. Rather, he alleges that a cavity
search was conducted without surgical gloves, and that he was
made fun of during the incidents, with derogatory comments
about his body. Thus, the allegations of the humiliating and
intrusive nature of the strip searches may support a cognizable
claim at this early juncture. <u>See</u> <u>Watson v. Sec'y Pennsylvania</u>
<u>Dept. Of Corrections</u>, 436 Fed. Appx. 131, 136 (3d Cir. July 8,
2011)(finding that: "Since the District Court did not examine the
circumstances surrounding the various searches in the light most
favorable to Watson, who emphasized that not all searches were
merely visual and who described purposeful sexual denigration
during some inspections, we will vacate and remand on this
ground.").

Defendants' motion to dismiss must be denied as to the strip
search claims, and Defendants named in that claim: Condito,
Conway, DeRosa, Piercey, and Gonzalez, must file an answer to the
allegations.

2.   <u>Conditions of Confinement</u>

Plaintiff alleges that the conditions of his confinement violated his constitutional rights.  In particular, he states that he was denied recreation, denied access to legal materials and the law library, and denied his right to practice his Muslim religion.

While each of these allegations could amount to a constitutional violation, Plaintiff has not pled any facts supporting the "plausibility" of such.  See Iqbal, 556 U.S. at 678-79.

A.   Legal Access Claims

The right of access to the courts derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments. The right of access to the courts requires that "adequate, effective, and meaningful" access be provided to inmates wishing to challenge their criminal charge, conviction, or conditions of confinement. Bounds v. Smith, 430 U.S. 817, 822, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). Prison officials must "give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the Courts." Id. at 825.

Bounds held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate

14

assistance from persons trained in the law." But the right of access to the courts is not unlimited. "The tools [that <u>Bounds</u>] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." <u>Lewis v. Casey</u>, 518 U.S. 343, 355, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).

Moreover, a prisoner alleging a violation of the right of access must show that prison officials caused previous or imminent "actual injury" by hindering efforts to pursue such a claim or defense. <u>See</u> <u>Lewis</u>, 518 U.S. at 348-51, 354-55; <u>Oliver v. Fauver</u>, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint." <u>Lewis</u>, 518 U.S. at 351.

Here, Plaintiff fails to allege any actual injury due to the alleged denial of access to legal materials. He does not allege that he was unable to file this or any other complaint in the

courts. He also does not allege that any of his court cases were dismissed because he did not have timely access to the courts. He has not provided any facts as to how this has affected his ability to pursue any legal claims or any actual injury that has occurred. Thus, the allegations in the Complaint are too conclusory to show a denial of court access sufficient to rise to the level of a constitutional deprivation under the Iqbal pleading standard, and Defendants' motion to dismiss as to this claim must be granted.  The denial of access to the courts claim will be dismissed, without prejudice, for failure to state a claim.

    B.   Religious Claims

    Plaintiff states repeatedly in the Complaint that he was denied his "right to practice religious freedom as a practicing Muslim." (Complt., ¶¶ 2, 19(b), 20, 30(b), 34, 76). However, he does not say how his rights have been violated.

    The Free Exercise Clause of the First Amendment prohibits prison officials from denying an inmate "a reasonable opportunity of pursuing his faith." See Cruz v. Beto, 405 U.S. 319, 322 & n.2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972). The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), see 42 U.S.C. § 2000cc-1, may be violated when officials impose a "substantial burden on [his] religious exercise." The facts asserted in a complaint must show that a prisoner's request for

religious services is based on his own sincerely held religious
belief. See Sutton v. Rasheed, 323 F.3d 236, 250 (3d Cir. 2003)
(If a prisoner's request is "not the result of sincerely held
religious beliefs, the First Amendment imposes no obligation on
the prison to honor that request.") (quoting DeHart v. Horn, 227
F.3d 47, 52 (3d Cir. 2000)).

     In this Complaint, Plaintiff does not assert in what way any
defendant interfered with his exercise of his religious beliefs.
Nor does Plaintiff allege facts showing that the government
imposed a substantial burden on his religious exercise, contrary
to RLUIPA. Plaintiff's Complaint in this case fails to make out a
First Amendment free exercise claim because Plaintiff does not
allege facts showing that any of the named defendants denied him
a reasonable opportunity to pursue his faith.  Accordingly,
Plaintiff's allegations are insufficient to state a Free Exercise
claim against any named defendant under the Iqbal pleading
standard or a claim under RLUIPA. This Court will grant the
motion to dismiss as to these claims, construed under Free
Exercise and the RLUIPA, for failure to state a claim upon which
relief may be granted. However, Plaintiff is hereby given leave
to file an amended complaint that is complete on its face stating
a Free Exercise Clause and/or RLUIPA claim against one or more of
the named defendants.

     C.   Recreation

In Bell v. Wolfish, the Supreme Court held that whether a condition of a pretrial detainee's confinement violates his constitutional rights turns on whether the restriction is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. See 441 U.S. 520, 535-39, 99 S.Ct. 1861, 60 L.Ed.2d 447, (1979); see also Hubbard v. Taylor, 538 F.3d 229, 235 (3d Cir. 2008) (holding that conditions of confinement claims by pretrial detainees must be assessed in light of the totality of the circumstances existing within the institution in order to determine whether the challenged condition amounts to a genuine privation).

Since Plaintiff's claims asserting limited recreation time do not indicate that Plaintiff is subjected to a genuine privation as a result of being forced to remain indoors 23 hours a day, such allegations fail to state a claim. See Diaz v. Cumberland Cty, 2010 WL 3825704, at *5 (D.N.J. Sept. 23, 2010) (dismissing with prejudice a claim by pretrial detainee asserting that he was availed to only one hour of yard recreation per day and explaining that, in order to assert a deprivation amounting to a punishment imposed in violation of due process, the confined individual claiming insufficient recreation must state facts showing that denial of recreation was such that it caused injury to his ability to control his muscular functions or to maintain his/her range of physical motions) (citing Antonelli v. Sheahan,

18

81 F.3d 1422, 1432 (7th Cir. 1996) (affirming dismissal of
detainee's claims because "[l]ack of exercise may rise to a
constitutional violation in extreme and prolonged situations
where movement is denied to the point that the inmate's health is
threatened"); <u>Cary v. Rose</u>, 902 F.2d 37 (7th Cir. 1990) (where
detainees alleged that they were denied adequate exercise and
recreation but admitted that they had room in their cells and in
the hallway to run in place or perform calisthenics, their
allegations could not amount to a constitutional claim); <u>Ellis v.
Crowe</u>, 2009 WL 724158, at *13 (E.D. La. Feb. 19, 2010)
(detainee's claim should be dismissed if the facts he alleges do
not show that he was so deprived of recreation to suffer a
physical injury, such as muscle atrophy or loss of range of
motion)).

Thus, the allegations in the Complaint are too conclusory to
show a denial sufficient to rise to the level of a constitutional
deprivation under the <u>Iqbal</u> pleading standard.  Defendants'
motion to dismiss with regard to this claim is granted.  The
denial of recreation claim will be dismissed without prejudice
for failure to state a claim.

3.   <u>Retaliatory Cell Transfers</u>

Plaintiff claims that he was transferred from cell to cell,
and that he was subject to unjustified cell searches in

retaliation for being an inmate advocate and for filing
grievances.

"Government actions, which standing alone, do not violate
the Constitution, may nonetheless be constitutional torts if
motivated in substantial part by a desire to punish an individual
for exercise of a constitutional right." Allah v. Seiverling, 229
F.3d 220, 224-25 (3d Cir. 2000); Mitchell v. Horn, 318 F.3d 523,
530 (3d Cir. 2003). In order to state a *prima facie* case of
retaliation, a prisoner must assert facts demonstrating that: (1)
the conduct in which he was engaged was constitutionally
protected; (2) he suffered an adverse action at the hands of
prison officials; and (3) his constitutionally protected conduct
was a substantial or motivating factor in the prison officials'
decision to impose such adverse action. See Carter v. McGrady,
292 F.3d 152, 157-58 (3d Cir. 2002) (quoting Rauser v. Horn, 241
F.3d 330, 333 (3d Cir. 2001)). Moreover, to show an "adverse
action," the inmate must assert facts demonstrating that
defendants' actions were of such nature that they were
"sufficient to deter a person of ordinary firmness from
exercising his [constitutional] rights." Allah, 229 F.3d at 225.

Here, Plaintiff's filing of grievances qualifies as
protected activity within the meaning of the First Amendment.
Moreover, it is possible that Plaintiff's transfer from cell to
cell was conducted with such excessive frequency that the

20

cumulative effect of these transfers amounted to an adverse action.[3] Cf. Scher v. Engelke, 943 F.2d 921 (8th Cir. 1991), cert. denied, 503 U.S. 952, 112 S.Ct. 1516, 117 L.Ed.2d 652 (1992) (finding harassment where prisoner's cell was searched ten times in nineteen days, i.e., more frequently than on bi-daily basis); but see Proudfoot v. Williams, 803 F. Supp. 1048 (E.D. Pa. 1992) (three searches within fourteen days did not amount to a constitutional violation when each search was made for a legitimate purpose). Thus, although not pled, it is possible that Plaintiff might detail a timeline of events suggesting a substantial connection between Plaintiff's filings of grievances and his transfers from cell to cell and cell searches.

Therefore, like Plaintiff's allegations of unconstitutional conditions of confinement, Plaintiff's retaliation claims will be dismissed without prejudice, and Plaintiff will be allowed an opportunity to file an amended complaint to plead, within the mandates of Iqbal, a connection between the transfers and searches, and the grievances he has filed.

---

[3]     Inmates have no Due Process liberty interest in being assigned to a particular correctional institution, moreover to a particular prison cell. Accord Wilkinson v. Austin, 545 U.S. 209, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005) (the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); see also Walker v. Hughes, 558 F.2d 1247, 1252 (6th Cir. 1977) ("law ... does not restrict the authority of prison officials over the inmates as to placement in [different locales]").

4.   Deprivation of Property

Plaintiff states that his property was either lost or stolen when he was transferred from detention on December 22, 2009.  He was told his property was given to another inmate who had been released.  (Complt., ¶¶ 69-70).

The Fourteenth Amendment provides, in pertinent part here, that the State may not "deprive any person of life, liberty, or property, without due process of law[.]" The "due process of law" essentially requires that the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty or property. Zappan v. Pennsylvania Board of Probation and Parole, 152 Fed. Appx. 211, 220 (3d Cir. 2005) ("The essential requirements of any procedural due process claim are notice and the opportunity to be heard.").

Nonetheless, to the extent that Plaintiff was deprived of personal property as a result of the transfer to another cell, he has a post-deprivation remedy.

Property loss caused by the intentional acts of government officials does not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under state law. See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v.

22

Palmer, 468 U.S. 517 (1984); Holman, 712 F .2d at 856.[4]  The New
Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et
seq., provides a post-deprivation judicial remedy to persons who
believe they were deprived of property at the hands of the state
or local government. See Holman, 712 F.2d at 857; Asquith v.
Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd
186 F.3d 407 (3d Cir. 1999).

Therefore, Defendants' motion to dismiss is granted with
regard to the deprivation of property claim asserted by
Plaintiff.

5.   Official Capacity Claims

The Eleventh Amendment to the United States Constitution
provides that, "[t]he Judicial power of the United States shall
not be construed to extend to any suit in law or equity,
commenced or prosecuted against one of the United States by
citizens of another State, or by Citizens or Subjects of any
Foreign State." As a general proposition, a suit by private
parties seeking to impose a liability which must be paid from

---

[4]      In Logan v. Zimmerman Brush Co., the Supreme Court
explained, however, that post-deprivation remedies do not satisfy
the Due Process Clause if the deprivation of property is
accomplished pursuant to established state procedure rather than
through random, unauthorized action. 455 U.S. 422, 435-36 (1982);
but see Tillman v. Lebanon Co. Correctional Facility, 221 F.3d
410, 421 n.12 (3d. Cir. 2000) (citing United States v. James
Daniel Good Real Property, 510 U.S. 43, 53 (1993)) (in
"extraordinary situations" such as routine deduction of fees from
a prisoner's account even without authorization, post-deprivation
remedies may be adequate).

23

public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Ky. v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). A state's Eleventh Amendment immunity is not overridden by 42 U.S.C. § 1983. Quern v. Jordan, 440 U.S. 332, 339, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). "Individual state employees sued in their official capacity are also entitled to Eleventh Amendment immunity because 'official capacity suits generally represent only another way of pleading an action' against the state. Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 254 (3d Cir. 2010) (quoting Hafer v. Melo, 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)).

Thus, all official capacity claims against Defendants must be dismissed.

6.   Conspiracy

As noted, Plaintiff seeks to assert jurisdiction under 42 U.S.C. § 1985.  To state a claim under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States.

United Broth. of Carpenters and Joiners v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983).  Here, Plaintiff does not assert facts detailing the specific elements required by the statute.  Any conspiracy claims, therefore, must be dismissed, without prejudice.

## CONCLUSION

For the foregoing reasons the motion to dismiss is granted in part, and denied in part.  Plaintiff may file an amended complaint to address the deficiencies of his Complaint as noted herein.  An appropriate Order accompanies this Opinion.

CLAIRE C. CECCHI, District Judge
United States District Court

Dated: October 25, 2012